**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**


August Term, 2013


(Submitted: February 3, 2014                    Decided: November 19, 2014)


Docket No. 13-830-cv



- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


NAF HOLDINGS, LLC,

   *Plaintiff-Counter-Defendant-Appellant*,

v.

LI & FUNG (TRADING) LIMITED,

   *Defendant-Counter-Claimant-Appellee.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


Before: LEVAL, CALABRESI and LYNCH, *Circuit Judges*.

   Plaintiff NAF Holdings, LLC appeals from the judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*) granting summary judgment in favor of the defendant Li & Fung (Trading) Limited. The district court dismissed the claim for breach of contract on the grounds that (i) under Delaware law the claim is a derivative claim of the plaintiff's subsidiaries and therefore may not be brought by plaintiff as a direct claim, and (ii) the claims could not be brought derivatively as claims of the subsidiaries because the subsidiaries had committed themselves in a settlement agreement not to bring such claims. The Court of Appeals (Leval, *J.*) certifies to the Delaware Supreme Court the question whether a corporation is barred under Delaware law from suing to enforce a contract on the ground that the damages it suffered from the contractual breach resulted from harm to the corporation's subsidiary.

   Judge LYNCH concurs in a separate opinion.

George A. Reihner, Wright & Reihner, P.C., Scranton, Pennsylvania, for *Plaintiff-Counter-Defendant-Appellant*.

John J. Hay & Ulyana Bardyn, Dentons US LLP, New York, New York, for *Defendant-Counter-Claimant-Appellee*.

LEVAL, *Circuit Judge*:

Plaintiff NAF Holdings, LLC ("NAF") appeals from the judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*) in favor of defendant Li & Fung (Trading) Limited ("Trading"). NAF's complaint alleges that Trading breached a contract between them and seeks damages for the harm it suffered as the result of Trading's breach. Under the contract, Trading had made a commitment to NAF that it would serve as sourcing agent for Hampshire Group, Limited ("Hampshire") once NAF completed its contemplated acquisition of Hampshire. The complaint alleges that Trading wrongfully repudiated the contract and that, as a consequence of Trading's breach, NAF lost financing commitments provided by third parties (which depended on the contract remaining in effect) and was therefore unable to complete the acquisition of Hampshire.

After making its contract with Trading, NAF decided to effectuate its acquisition of Hampshire through two newly created subsidiaries, NAF Holdings II LLC ("NAF II"), a wholly-owned subsidiary of NAF, and NAF Acquisition Corp. ("NAF Acquisition"), a wholly-owned subsidiary of NAF II (collectively, "the NAF Subsidiaries"). The NAF Subsidiaries then entered into a merger agreement with Hampshire ("Merger Agreement"), to be consummated upon the successful acquisition by the NAF Subsidiaries of Hampshire's stock through a tender offer. Trading allegedly repudiated and refused to perform its contractual obligation to NAF to serve as

Hampshire's sourcing agent. Trading's repudiation prevented the NAF Subsidiaries from obtaining the credit they needed to acquire the Hampshire shares and caused them losses in excess of $30 million, which in turn caused substantial loss to their parent, NAF.

The district court granted summary judgment in favor of Trading on the grounds that any injury to NAF resulted from injury to its subsidiaries, so that "any right NAF has to bring suit would therefore be in a derivative, not direct, capacity." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10 Civ. 5762(PAE), 2013 WL 489020, at *4 (S.D.N.Y. Feb. 8, 2013). The court further reasoned that the suit could not be brought as a derivative action on behalf of the NAF Subsidiaries because, in a settlement agreement arising out of a dispute with Hampshire, "NAF's subsidiaries have both expressly relinquished their rights to pursue claims against Trading." *Id.*

In discussing the appropriate tests for distinguishing shareholder suits that could be brought as direct actions from those that could be brought only as derivative actions, the Delaware Supreme Court has indeed used broad categorical language which, if applied to this claim, would bar direct suit. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). But the claims asserted in *Tooley* and the cases that have applied its rule are significantly different from the claims made here, and the differences appear to us to justify a different conclusion. We believe it is prudent to ask the Delaware Supreme Court how it would rule on this type of claim, rather than guess at the application of *Tooley* to a very different scenario. We therefore certify our question to the Delaware Supreme Court.

## BACKGROUND

### I.    Factual Background

#### a.   The Attempted Acquisition of Hampshire

In 2008, NAF, a Delaware limited liability holding company wholly owned by Efrem Gerszberg, began to pursue acquisition of Hampshire through a tender offer for its stock. Contemplating the operation of Hampshire following the expected acquisition, NAF sought a commitment by Trading that it would serve as Hampshire's sourcing agent. In December 2008, NAF and Trading entered into a contract, by which Trading agreed to serve as Hampshire's sourcing agent once NAF acquired Hampshire.

NAF then created the NAF Subsidiaries to effectuate the acquisition of Hampshire. On February 23, 2009, the NAF Subsidiaries entered into the Merger Agreement with Hampshire to take effect upon their successful acquisition of the Hampshire stock through a tender offer at $5.55 per share (resulting in an aggregate purchase price of $30,353,865). In order to finance the acquisition, NAF Acquisition secured a $40 million bridge loan commitment from Keba, LLC ("Keba"). Keba's commitment was conditioned on Hampshire having a post-merger working capital line of credit. To satisfy that condition, Gerszberg obtained a loan commitment from Wells Fargo Trade Capital, LLC ("Wells Fargo") in February 2009 to fund $30 million of a $40 million credit facility. Wells Fargo's commitment was conditioned on Trading's agreement remaining in force to act as sourcing agent.

In March 2009, after discovering that Hampshire's projected sales for 2009 were significantly less than its sales for 2008, Trading allegedly repudiated its commitment to serve as Hampshire's sourcing agent. Appendix of Appellant ("App'x") at 867, *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 13-830-cv (2d Cir. Jun. 26, 2013). Notwithstanding Trading's

repudiation, NAF persisted in its attempt to acquire Hampshire. On April 24, 2009, NAF secured Wells Fargo's agreement to finance Hampshire's post-merger working line of credit, provided Wells Fargo received side collateral and a high rate on the credit facility. However, Wells Fargo informed NAF that it would not provide a commitment letter until April 27, 2009. Later on April 24, 2009, Gerszberg advised Keba that NAF did not yet have a binding commitment for Hampshire's post-merger line of credit. Keba then withdrew its undertaking to furnish the bridge loan. On April 26, 2009, Hampshire and the NAF Subsidiaries terminated their Merger Agreement. NAF contends that the NAF Subsidiaries suffered losses of in excess of $30 million caused by Trading's repudiation of its contractual commitment.

### b. The Hampshire Settlement Agreement

After the termination of the Merger Agreement, NAF, the NAF Subsidiaries, and Gerszberg drafted a complaint against Hampshire, alleging a variety of claims. On September 28, 2009, Gerszberg and the NAF Subsidiaries, but not NAF, entered into a Settlement Agreement and Release (the "Settlement Agreement") with Hampshire. Hampshire paid them $833,000 in exchange for a full release of all claims relating to the failed merger. The Settlement Agreement prohibited the NAF Subsidiaries and Gerszberg, but not NAF, from

> institut[ing] . . . or voluntarily aid[ing] in . . . any action, claim, suit, proceeding, arbitration or cause of action of any kind whatsoever . . . *against any person, whether or not a party to this Settlement Agreement,* to recover damages . . . or *any other losses allegedly sustained as a result of the Transaction Agreements or the Transaction.*

*NAF Holdings, LLC*, 2013 WL 489020, at *4 (emphasis in district court opinion).

### c. This Litigation

NAF then brought this action against Trading, seeking damages of over $30 million caused by Trading's wrongful repudiation of its contract to serve as Hampshire's sourcing agent.

NAF's complaint seeks an award of damages, based on Trading's injury to the value of NAF's property—to wit, its shareholdings in the NAF Subsidiaries.

In a colloquy with the district court during the argument of Trading's motion for summary judgment, NAF's counsel stated that NAF's injury was incurred in its capacity as the 100% owner of the subsidiaries, which had directly incurred the losses. *NAF Holdings, LLC*, 2013 WL 489020, at *6. As recited above, the district court granted summary judgment in favor of Trading, concluding that NAF's claim against Trading could not be maintained as a direct suit, but only as a derivative action in the name of the NAF Subsidiaries. NAF brings this appeal arguing numerous grounds.

## DISCUSSION

**I.     Whether NAF May Sue Trading in Its Own Name for Breach of Contract.[1]**

The principal question on this appeal is whether, under Delaware law,[2] NAF may bring this action against Trading, based on Trading's breach of its contract with NAF, as a direct suit or whether in response to the objection of Trading, the suit must be treated as a derivative action on behalf of the NAF Subsidiaries, which may be brought only upon complying with the procedures required by Delaware law for a derivative claim. *See Tooley*, 845 A.2d at 1036 ("[I]f

---

[1] We review a district court's grant of summary judgment *de novo*, "viewing the record in the light most favorable to the non-moving party." *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007). For the court to grant summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

[2] Neither party contests the applicability of Delaware law to this question. The contract between NAF and Trading contains a forum selection clause providing that it "shall be governed by and construed in accordance with the laws of the State of New York and the parties hereto submit to the exclusive jurisdiction of the federal and state courts of the State of New York for the purpose of enforcing any claim arising hereunder." App'x at 126. Under New York law, courts "look to the law of the state of incorporation in adjudicating a corporation's 'internal affairs,'" *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980), including questions as to whether a claim is direct or derivative. *See Seidl v. Am. Century Cos.*, 713 F. Supp. 2d 249, 255 (S.D.N.Y. 2010), *aff'd*, 427 F. Appx. 35 (2d Cir. 2011). NAF and its subsidiaries are incorporated in Delaware.

an action is derivative, the plaintiffs are then required to comply with the requirements of Court of Chancery Rule 23.1 that the stockholder: (a) retain ownership of the shares throughout the litigation; (b) make presuit demand on the board; and (c) obtain court approval of any settlement. Further, the recovery, if any, flows only to the corporation.").

In *Tooley*, the Delaware Supreme Court discussed extensively the standard for determining whether a stockholder may bring a direct action based in any part or degree on injury to the corporation, or is limited to bringing a derivative action constituting essentially a suit by the corporation brought at the instance of its shareholder. Minority shareholders of Donaldson, Lufkin, & Jenrette ("DLJ") had sued directors of DLJ alleging that the defendants had breached fiduciary duties by agreeing to a 22-day delay before Credit Suisse's tender offer for DLJ's shares and the merger of DLJ into Credit Suisse became effective. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, No. Civ.A 18414-NC, 2003 WL 203060, at *2 (Del Ch. Jan. 21, 2003). The plaintiffs claimed that, because of the delay, shareholders lost 22 days of time value of the money they were to receive as the cash portion of payment for their shares. *Id.*

The court of first instance, the Delaware Court of Chancery, dismissed the suit on the ground that, because all shareholders were similarly affected by the delay, the plaintiff-shareholders failed to plead a "special injury," with the consequence that their claim should be viewed as derivative and not properly brought as a direct claim. *Id.* at *4. The Supreme Court affirmed the dismissal of the claim, but on a different ground. The Supreme Court concluded that the defect in the claim lay in the fact that the defendants had done nothing improper or illegal in invoking the 22-day delay, so that the complaint did not state a claim upon which relief could be granted. *See Tooley*, 845 A.2d at 1039 ("[I]n reality, [the complaint] states no claim at all.").

7

In so ruling, however, the Supreme Court took issue with the Chancery Court's analysis of the direct/derivative question, and in particular with its use of the *special injury* test. Because the complaint did not seek "relief that would go [to] the corporation," the Supreme Court explained that "there is no basis to hold that the complaint states a derivative claim." *Id.* The main body of the Supreme Court's opinion is devoted to discussion of what should be the standard for determining whether a shareholder claim may be brought directly, or only through the derivative procedure. The Supreme Court rejected the pertinence of the *special injury* test, which had previously been widely utilized, observing that the test was "not helpful to a proper analytical distinction between direct and derivative actions." *Id.* at 1035. The Court explained,

> The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. [In order to bring a direct claim, the] stockholder must demonstrate that the duty breached was owed to the stockholder and *that he or she can prevail without showing an injury to the corporation.*

*Id.* at 1039 (emphasis added).

If both prongs specified in the *Tooley* dictum – breach of a duty owed directly to the stockholder, and absence of need for the stockholder-plaintiff to show any injury to the corporation in order to prevail in the suit – are indeed required to validate a stockholder's direct suit, it is then correct that NAF's claim cannot be brought as a direct suit. NAF's claim would pass the first prong of the test, as Trading's contractual duty was owed directly to NAF, but would fail the second prong, as NAF cannot demonstrate its injury without showing an injury to the corporation in which it owns stock. In its Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, NAF characterized "[t]he real question" as "whether NAF suffered damages as a result of Trading's breach because the breach prevented the merger between Hampshire and NAF II and NAF Acquisition from taking place, *thereby causing financial loss to NAF II and NAF Acquisition*." App'x at 462 (emphasis added). NAF further

conceded at oral argument that it had suffered no harm from Trading's breach other than harm it suffered as a result of the harm inflicted on its subsidiaries. *NAF Holdings, LLC*, 2013 WL 489020, at *6. It is clear that NAF could not satisfy the second prong of the test announced in *Tooley*, which requires a stockholder-plaintiff to show that it "can prevail without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039. Accordingly, applying *Tooley*, the district court ruled that "NAF's claim is necessarily derivative [because it] is only through a loss to the NAF Subsidiaries that NAF claims to have suffered a loss at all." *NAF Holdings, LLC*, 2013 WL 489020, at *6; *accord Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) ("[W]here a plaintiff shareholder claims that the value of his stock will deteriorate and that the value of his proportionate share of the stock will be decreased as a result of alleged director mismanagement, his cause of action is derivative in nature."); *Debussy LLC v. Deutsche Bank AG*, No. 05 Civ. 5550(SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006), *aff'd*, 242 F. Appx. 735 (2d Cir. 2007). We cannot fault the district court for following in detail the broad pronouncement of the Delaware Court.

There is, however, a difference between this case on the one hand and, on the other hand, *Tooley* and all the precedents reviewed by *Tooley* in its discussion. We believe the Delaware Supreme Court might consider this difference to be significant. The claim in *Tooley* was based on the defendants' alleged violation of fiduciary duties arising by law from the defendants' status in the corporate structure. These are the most conventional and familiar sorts of claims involved in litigation by shareholders of the type that raises troublesome questions whether the suit is properly characterized as direct or derivative. Indeed, each of the many precedents of shareholder litigation that the *Tooley* opinion reviewed was also based on an allegation of breach of a fiduciary (or other similar) duty implied in law arising from the status of the defendant in

relation to the corporation.[3] And each of the subsequent cases in which the Delaware Supreme Court has cited *Tooley* has also involved similar claims of breach of fiduciary (or like) duties that are implied by law arising out of the defendant's relationship to the corporation.[4]

NAF's claim is different in this respect. Its claim is not predicated on a breach of a duty that the law imposes by reason of the defendant's affiliation with the corporation. NAF's claim is based on a contractual duty owed directly to it by the defendant. Trading had made a contractual commitment to NAF that Trading would undertake a function in support of Hampshire's operations. NAF alleges that Trading wrongfully repudiated the contractual obligation it owed directly to NAF.

Because NAF's claim arises from a contractual commitment Trading made directly to it, this suit raises considerations that were not present in *Tooley* or the cases that have applied it. It seems to us unclear whether the Delaware Supreme Court intended that the broad rule announced in *Tooley* should apply in equally categorical fashion to a case of this nature, in which a plaintiff seeks to enforce a contractual obligation owed directly to it by the defendant. The defendant's direct contractual obligation to the plaintiff has a significant bearing on the purpose of the obligation of a shareholder to proceed in appropriate cases by derivative action, as

---

[3] *See Parnes v. Bally Entm't Corp.*, 722 A.2d 1243 (Del. 1999); *Grimes v. Donald*, 673 A.2d 1207 (Del. 1996); *In re Tri-Star Pictures, Inc., Litig.*, 634 A.2d 319 (Del. 1993); *Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348 (Del. 1988); *Lipton v. News Int'l, Plc*, 514 A.2d 1075 (Del. 1986); *Bokat v. Getty Oil Co.*, 262 A.2d 246 (Del. 1970); *Agostino v. Hicks*, No. Civ.A. 20020-NC, 2004 WL 443987 (Del. Ch. Mar. 11, 2004); *Moran v. Household Int'l, Inc.*, 490 A.2d 1059 (Del. Ch. 1985); *Elster v. Am. Airlines, Inc.*, 100 A.2d 219 (Del Ch. 1953).

[4] *Blaustein v. Lord Baltimore Capital Corp.*, 84 A.3d 954 (Del. 2014); *Ark. Teacher Ret. Sys. v. Countrywide Fin. Corp.*, 75 A.3d 888 (Del. 2013); *Ams. Mining Corp. v. Theriault*, 51 A.3d 1213 (Del. 2012); *Brooks-McCollum v. Emerald Bd. of Dirs.*, 29 A.3d 245, 2011 WL 4609900 (Del. Oct. 5, 2011) (Table); *Feldman v. Cutaia*, 951 A.2d 727 (Del. 2008); *N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92 (Del. 2007); *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006); *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 766 (Del. 2006); *FS Parallel Fund, L.P. v. Ergen*, 879 A.2d 602, 2005 WL 1950199 (Del. July 21, 2005) (Table).

well as on the rule that allows the defendant, as opposed to the corporation, to interpose

objection to the suit being brought directly, instead of derivatively in the name of the

corporation.

The separate identity of the corporation from its shareholders is a basic and fundamental tenet of corporate law. *See Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 686-87 (Del. 1959). The purpose of the rule that requires that certain stockholder suits be brought only by means of a derivative action is to protect the separate integrity of the corporation, distinct from its shareholders – allowing the corporation, within the bounds of the business judgment rule, to make decisions for itself rather than have them dictated by shareholders. There are many valid business reasons why a corporation would want *not* to have litigation brought on its behalf, even if the conduct of the litigation will cost the corporation no money (because the shareholder would pay the expenses) and the litigation, if successful, would bring an award of damages to the corporation. So long as the decision whether to allow the litigation is made by independent persons whose duty of loyalty goes to the corporation (and falls within the accommodating parameters of the business judgment rule), the obligation on the would-be-plaintiff shareholder to proceed by derivative action is designed to protect the corporation's interest in making its own business decisions. *See Grimes*, 673 A.2d at 1215-16.

Categorical extension of the aspect of the *Tooley* rule that prohibits the stockholder from proceeding by direct suit unless the stockholder "can prevail without showing an injury to the corporation" to cases where the stockholder is enforcing a personal contractual right would in many circumstances impair, rather than protect, the corporation's decision-making autonomy. A minority shareholder who wishes to secure contractual commitments from persons or entities that would help the corporation succeed in its profit-motivated objectives, but who recognizes

the obstacles in the way of a shareholder's attempt to proceed by derivative action, may be unwilling to contribute those resources to the corporation unless the corporation agrees that the shareholder may sue directly to enforce the contracts made to secure services for the corporation's benefit.[5] The corporation may be highly desirous of agreeing to this condition so as to obtain the benefits. However, the *Tooley* rule would prevent the corporation from delivering an enforceable contract to allow the suit, so as to secure this benefit for itself.[6] As the objection to the shareholder's bringing the suit directly, as opposed to by derivative procedure, may be raised by the defendant, the corporation's contractual consent would serve no purpose. The shareholder, in bringing the suit, would be unable to satisfy the requirement of *Tooley* of demonstrating "that he or she can prevail without showing injury to the corporation." *Tooley*, 845 A.2d at 1039. Barring the shareholder from asserting a claim arising from its own personal contract with the defendant seems to us difficult to justify.

---

[5] Of course, NAF is not a minority shareholder, but rather is a 100% owner in its subsidiaries, and NAF in turn is owned 100% by an individual shareholder, Gerszberg. While there are arguments that NAF's control of the NAF Subsidiaries when they entered the Settlement Agreement should weigh against allowing it bring a suit in its own name now, NAF was not made a party to that suit, and neither was Trading. We can only speculate as to why NAF was excluded from the Settlement Agreement; it may be that the parties made an error or that this exclusion was specifically negotiated to allow NAF to bring this very suit. Regardless, the fact of the Settlement Agreement, which excludes both parties to this suit, seems irrelevant to the specific question of whether Delaware law would hold that NAF's claim against Trading is direct or derivative.

[6] Consider a minority shareholder in a small, closely held corporation in the entertainment business who has access to Frank Sinatra and offers to obtain Sinatra's contractual commitment to perform at an event staged by the corporation. The shareholder's undertaking is conditioned on receiving personally Sinatra's contractual commitment to perform, as well as the commitment of the corporation that the shareholder may sue directly to enforce Sinatra's contractual promise. Although the corporation would be entitled to sue as a third-party beneficiary of the shareholder's contract, the shareholder might reasonably worry that the corporation will be reluctant to sue such an influential figure in the entertainment industry. For the corporation, the shareholder's offer represents a highly desirable opportunity, but the *Tooley* rule, if applicable to these facts, would prevent the parties from achieving this result which all of them desire.

Such a rule, furthermore, conflicts with fundamental principles of contract law. As a general proposition, a party that obtains the contractual commitment of another may sue to remedy a breach of that contractual commitment. When the commitment is to render a benefit to a third party, the doctrine of third-party beneficiary contract allows the benefitted third party also to sue to enforce the promise, notwithstanding that it was not a party to the contract. But the rule that allows a third-party beneficiary to sue in order to preserve the promised benefit to itself does not disable the party to which the contractual commitment was made from suing to enforce the commitment made to it. *See* 13 Williston on Contracts § 37:55 (4th ed.) ("Despite the apparent difficulties caused by the promisor being potentially liable to two parties, most courts have found it simpler to allow both the promisee and the beneficiary to sue the promisor to enforce the third party beneficiary contract.").

It is no sufficient answer that the rights of the contracting party to enforce the promise made to it would be protected through a suit brought by the third-party beneficiary. There are many likely reasons why the third-party beneficiary cannot be depended upon to sue and thus protect the interest of the party that secured the promise. Consider for example a hypothetical case. Suppose the plaintiff is an agent ("Agent"), and Agent has contracted with a performer ("Performer") for 25% of the revenues Performer receives through Agent's efforts. Agent then makes a contract with a leading nightclub ("Club"), in which Club makes a commitment to Agent that it will book Performer to perform for four weeks for a fee of $50,000 per week. Agent promises in return to secure Performer's performance. Club then renounces the contract, refusing to book Performer. As a result of Club's breach, Performer, the third-party beneficiary, has suffered a loss of fees of $200,000, and Agent has suffered a loss of the $50,000 he would have earned as a percentage of Performer's fees.

Without question, Performer could sue Club, but Performer may not wish to do so, because Performer reasonably believes that suing Club would harm Performer's prospects of obtaining future work. Agent's only recourse to recover his loss is to sue Club for his $50,000 loss, based on Club's breach of the contractual commitment it made directly to Agent. Agent's suit would allege: The defendant Club contracted with me to book Performer for four weeks at $50,000 per week. Club breached the contract. I had a contractual entitlement with Performer to 25% of her $200,000 fee. I suffered a loss of $50,000 resulting from the defendant's breach.

We think it would make little sense in this scenario to bar Agent from suing on the grounds that the loss he suffered was indirect and derivative of a loss suffered by an independent person. The defendant owed a contractual commitment directly to the plaintiff and breached it, causing the plaintiff a loss. The fact that the plaintiff's loss resulted indirectly from a loss suffered by an independent third-party beneficiary should make no difference to the plaintiff's right to sue for the breach of a contractual promise to itself. While we have no authority on point from the Supreme Court of Delaware, we believe it would allow Agent to sue Club for the breach of Club's contractual commitment, notwithstanding that Performer is independent of Agent and Agent cannot prove his injury without showing injury to Performer. *See John Julian Constr. Co. v. Monarch Builders, Inc.*, 306 A.2d 29, 34 (Del. Super. Ct. 1973), *aff'd*, 324 A.2d 208 (Del. 1974) ("[W]here, in a third party beneficiary contract, the promisor has breached its duty to perform an act for the benefit of a creditor beneficiary, the promisee-the original obligor-has a right to recover the full value of the promised performance from the promisor."); *see also* 13 Williston on Contracts § 37:55 (4th ed.).

If in our hypothetical case, Agent is permitted to sue Club directly for Club's breach of its promise made to Agent, notwithstanding that Agent's loss results indirectly from the loss

suffered by an independent third-party beneficiary, we have difficulty seeing why the results should be otherwise merely because the third-party beneficiary of the contract is a corporation in which the plaintiff owns stock. Without question, the third-party beneficiary corporation is a separate entity independent of the plaintiff, but if the fact of independence does not bar direct suit by the contracting party to enforce a promise made directly to itself when the contracting party has no shareholder's ownership interest in the third-party beneficiary, we can see no reason why the result should be otherwise merely because the plaintiff owns stock in the third-party beneficiary.

There is a further consideration that leads us to question whether the Delaware courts would extend the *Tooley* rule to a case like this one. The aspect of the rule that permits the defendant (rather than the corporation) to raise the objection to the suit being brought directly by the shareholder, notwithstanding that the rule exists for the purpose of protecting the integrity of the corporation, makes far better sense when the asserted liability of the defendant is predicated on legal duties imposed by virtue of the defendant's fiduciary obligations to the corporation than when the defendant's asserted liability is predicated on his having undertaken a contractual commitment to the plaintiff. It might be very difficult to get persons to serve as directors, officers, and fiduciaries of corporations if taking those positions exposed them to suits by disgruntled shareholders for decisions made in good faith. Thus, where the defendant's asserted liability is based on a duty imputed by law to one who assumes fiduciary responsibilities to the corporation, as in all of the cases discussed in *Tooley*, it makes sense to allow such a defendant to insist on corporate separateness when accused of breach of the duties imposed by the law governing corporations. On the other hand, if a stranger has made a contractual commitment to the plaintiff to render a specified service to a corporation in which the plaintiff owns stock, and

then breaches the obligation and is sued by the person to whom the commitment was made for damages suffered by that person, it makes little sense to allow *the defendant* to protest that the plaintiff, to whom the promise of performance was made, cannot sue directly to remedy breach of the promise. In such circumstances, the defendant, whose only involvement with the corporation results from having contracted with the plaintiff to render services to it, has no cognizable interest in the protection of the corporation's power to make decisions independent of its shareholder.[7]

In light of these considerations, which were not at issue in *Tooley* or its antecedents or progeny, we question whether the Supreme Court would adhere rigidly to the second prong of the rule stated in its *Tooley* dictum when the shareholder's suit is brought to vindicate a contractual commitment made to itself by a defendant that has no connection to the corporation other than its contractual commitment to render a benefit to it.[8]

Supporting our doubts whether the *Tooley* Court intended to encompass cases of this nature when it formulated its test, we note an observation made in *Tooley* which arguably supports the view that *Tooley* was not meant to apply to cases like this one. The *Tooley* opinion

---

[7] A reasonable distinction might be drawn if the defendant owes a fiduciary duty to the corporation arising out of the defendant's status vis-à-vis the corporation, and the contractual commitment serving as the basis of the suit simply duplicates the status-based duty. In such a case literal adherence to the formulation of the *Tooley* dictum would seem more warranted. What we contemplate is a case like this one in which the defendant has no relationship to the corporation in which the plaintiff owns stock, other than the relationship that arises from the defendant's contractual undertaking.

[8] The purposes of the direct/derivative dichotomy might be preserved in such cases if objection to a direct action were reserved to the corporation and could not be interposed by the defendant who contracted with the plaintiff, at least without the corporation's approval. Even if the Delaware Supreme Court were to conclude that *Tooley* does not bar NAF from asserting a direct claim against Trading, Delaware might continue to apply the *Tooley* rule in its same form but limited to circumstances where the objection to the direct action is made or endorsed by the corporation, and not when the objection is asserted solely by the defendant who contracted with the shareholder-plaintiff.

was particularly complimentary of the very recent Chancery Court opinion in *Agostino v. Hicks*, No. Civ.A. 20020-NC, 2004 WL 443987 (Del. Ch. Mar. 11, 2004). In a footnote discussing the *Agostino* opinion, the *Tooley* opinion noted the Chancellor's explanation "that *the focus should be on the person or entity to whom the relevant duty is owed*." *Tooley*, 845 A.2d at 1036 n.9 (citing *Agostino*, 2004 WL 443987, at *7 n.54) (emphasis added). *Tooley*'s discussion of *Agostino* cites to *Agostino*'s footnote 54, where the Chancellor stated, "[I]n the context of fiduciary duty claims, the focus should be on the nature of the injury. *In other contexts, the focus upon to whom the relevant duty is owed will allow the segregation of derivative claims*." *Agostino*, 2004 WL 443987, at *7 n.54 (emphasis added). Thus, the reasoning of *Agostino*, which was praised in *Tooley*, suggests that, while fiduciary duty claims call for focus on the nature of the injury, other sorts of claims, such as suits to enforce contractual commitments, should be analyzed differently; the focus should be on whether the duty sought to be enforced was owed by the defendant directly to the plaintiff-shareholder.

Delaware law allows for the certification of questions of state law by federal courts of appeal directly to the Delaware Supreme Court. Del. Sup. Ct. R. 41(a)(ii). Under our Local Rule § 27.2(a), we may certify a question of state law to the highest court of a state. The application of *Tooley* to a case in which the plaintiff-shareholder's asserted right derives from the plaintiff's personal contract with the defendant, rather than from a fiduciary duty imposed by law on the defendant, is a matter of first impression that has not arisen in the Delaware courts. This case appears to us to present an original question of law, which "'seem[s] likely to recur and to have significance beyond the interests of the parties in a particular lawsuit.'" *In re Motors Liquidation Co.*, 755 F.3d 78, 86 (2d Cir. 2014) (quoting *Kidney Kolmar Labs., Inc.*, 808 F.2d 955, 957 (2d

Cir. 1987)). For all the reasons explained above, we respectfully ask the guidance of the Supreme Court of Delaware on a question which appears to us to be unusually troublesome.[9]

## CERTIFICATION

The following question is hereby respectfully certified to the Supreme Court of the State of Delaware for disposition in accordance with its Rule 41.

> Where the plaintiff has secured a contractual commitment of its contracting counterparty, the defendant, to render a benefit to a third party, and the counterparty breaches that commitment, may the promisee-plaintiff bring a direct suit against the promisor for damages suffered by the plaintiff resulting from the promisor's breach, notwithstanding that (1) the third-party beneficiary of the contract is a corporation in which the plaintiff-promisee owns stock; and (ii) the plaintiff-promisee's loss derives indirectly from the loss suffered by the third-party beneficiary corporation; or must the court grant the motion of the promisor-defendant to dismiss the suit on the theory that the plaintiff may enforce the contract only through a derivative action brought in the name of the third-party beneficiary corporation?

In considering our request, the Delaware Supreme Court should feel free to reformulate the question in whatever fashion the Court finds helpful. It is not our intention to constrain the state court by our formulation, but only to suggest how we conceive of the issue.[10]

## CONCLUSION

For the reasons stated, we certify the above question to the Delaware Supreme Court.

This panel will retain jurisdiction following the response of the Delaware Supreme Court.

---

[9] Until we are instructed by the Delaware Supreme Court whether NAF has asserted a direct or derivative claim, we need not address what effect, if any, the Settlement Agreement has on NAF's ability to bring this suit. It would also be premature to rule on NAF's remaining grounds for appeal.

[10] In accordance with the Delaware Court's Rule 41, we recommend that briefs be filed in the following order:
Opening Brief: Plaintiff-Appellant NAF Holdings, LLC
Responding Brief: Defendant-Appellee Li & Fung (Trading) Ltd.
Reply Brief: Plaintiff-Appellant NAF Holdings, LLC

GERARD E. LYNCH, Circuit Judge, concurring in the judgment:

I fully agree with the panel majority about the two propositions that dictate the result in this case.

First, the only injury suffered by the plaintiff in this case, NAF Holdings, LLC ("NAF"), came in the form of an injury to its wholly-owned subsidiaries. Maj. Op. at 3. NAF therefore sues in the capacity of a shareholder that suffered losses because of a diminution in value of the corporations in which it held shares. In this circumstance, the Delaware Supreme Court has announced that a shareholder may not bring a direct claim (as opposed to a shareholder derivative action) unless it can "demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004). As the Court acknowledges, if this pronouncement applies to this case, the district court must be affirmed, because NAF has conceded that it "suffered no harm from [defendant's] breach other than harm it suffered as a result of the harm inflicted on its subsidiaries." Maj. Op. at 8.

Second, it is not entirely clear that the Delaware Supreme Court would apply that statement from Tooley in this case. That is so for two reasons. First, the statement in Tooley is technically dictum – carefully considered dictum, yet nevertheless unnecessary to the decision in that case. And second, for reasons discussed by the Court at great length, the present case is not a perfect fit for the model of a shareholder derivative suit. Typically, a shareholder who seeks to bring a suit for harm done to the corporation is a *minority* shareholder who objects to the decision of the corporation's officers and directors to forgo a claim against a corporate insider. As the majority puts it, "The claim in Tooley was based on the defendants' alleged violation of fiduciary duties arising by law from the defendants' status in the corporate structure." Id. Here,

1

NAF seeks to sue not a corporate insider, but an outside party who is alleged to owe a contractual duty directly to NAF. Unlike the typical derivative plaintiff, moreover, NAF owns 100% of the shares of the injured subsidiaries. NAF's situation in this case is thus distinguishable from that of a disgruntled shareholder who objects that decisions of the corporation's management were made under a conflict of interest.

In short, we have strong dictum from the Delaware Supreme Court that seems to admit of no exceptions, and that if taken literally would bar the action in this case, and yet also arguable reasons why the present case is distinguishable. Although no decision from any Delaware court draws the distinction that the majority suggests might be appropriate, it is reasonable to "believe [that] the Delaware Supreme Court might consider this difference [between the present case and Tooley] to be significant." Maj. Op. at 9. I agree with the majority that this is a sufficient reason to certify the questions posed by the majority opinion to the Delaware Supreme Court.

The majority opinion argues that the Delaware Supreme Court *should* consider the distinction significant. I am not sufficiently certain of the correctness of that argument to join in urging that Court to permit a direct suit to go forward in this case. It is true that this is not a typical derivative suit, and that the normal concerns applicable to shareholder derivative suits – and the normal procedures required for bringing them – don't seem very applicable in this situation. It does not immediately follow, however, that the parent company can unproblematically bring this case on its own behalf. At least two considerations not fully taken into account in the present draft suggest the contrary.

First, while the majority opinion correctly points out the usual, and principal, considerations behind the limits on derivative suits by shareholders, it fails to give sufficient weight to a very basic point about corporate personhood. The many benefits of limited liability

(for society as well as for the shareholders) are built on the idea that every corporation is a distinct legal person from its parent or subsidiary corporations and from its various shareholders. Wholly apart from the corporate governance issues that disfavor derivative suits, there is something anomalous about allowing one corporation to bring a suit based on damages that accrue directly to a different corporation in which it owns a stake. Even where the shareholder is owed a duty directly by the defendant, where the *damages* suffered by the shareholder take the form only of the diminution in value of the corporation resulting from damages to the corporation, the shareholder is arguably fully protected by the corporation's ability to bring a suit to make itself whole.

Second, the procedural distinctions between this case and the traditional derivative suit do not all point in the direction of allowing NAF to bring this action. NAF is not a minority shareholder whose concerns, for sound business reasons or for corrupt self-interest, have been ignored by the board of the corporations who are the natural plaintiffs here. It is a 100% owner of those corporations, and it in turn is owned 100% by an individual shareholder, Gerszberg. Gerszberg could easily have ensured that the subsidiaries pursue the relief sought in this lawsuit; there is no hint in the record of recalcitrant boards of directors at the subsidiaries unresponsive to his or NAF's interests. The reason the case is not brought in the name of the subsidiaries is that Gerszberg himself entered a settlement agreement with Hampshire that appears to bind the subsidiaries, and himself personally, not to bring such an action. There is something peculiar in permitting a different member of the same corporate empire, which was fortuitously or strategically omitted from that settlement, to bring an action qua shareholder of the companies that agreed, for consideration, not to pursue the claim. In settling their claims against Hampshire, the subsidiaries – and the 100% owner of both the subsidiaries and NAF –

3

apparently concluded to accept the settlement amount in satisfaction of the obligations owed to the subsidiaries. Permitting NAF to pursue damages based on harm suffered by the subsidiaries is incongruous.

In short, even where the shareholder has personally contracted for services to be provided to the corporation, it does not seem to me as clear as it apparently does to my colleagues that the shareholder should be permitted to claim damages that flow only from his (or its) status as a shareholder in the corporation.

I do not put these considerations forward as compelling or necessarily successful counters to the logic set forth in the majority opinion. They trouble me sufficiently, however, that I would prefer to leave it to the Delaware Supreme Court to decide whether to retreat from its broad statement in Tooley without urging it to adopt any particular answer.