19-3078
*St. Clair-Hibbard v. American Finance Trust, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of May, two thousand twenty.

PRESENT:
> GUIDO CALABRESI,
> RICHARD C. WESLEY,
> RICHARD J. SULLIVAN,
> *Circuit Judges.*

———————————————————————————

Carolyn St. Clair-Hibbard, Individually
and on Behalf of All Others Similarly
Situated,

> *Plaintiff-Appellant,*

v.                                                                          19-3078

American Finance Trust, Inc., American
Finance Advisors, LLC, AR Global

Investments, LLC, Nicholas S. Schorsch,
William M. Kahane,

*Defendants-Appellees.*

_____

| | |
|---|---|
| For Plaintiff-Appellant: | OLIMPIO LEE SQUITIERI, Squitieri & Fearon, LLP, New York, NY. |
| For Defendant-Appellee American Finance Trust, Inc.: | PETER D. DOYLE (Matthew J. Morris, Shiloh A. Rainwater, *on the brief*), Proskauer Rose LLP, New York, NY. |
| For Defendants-Appellees American Finance Advisors, LLC, AR Global Investments, LLC, Nicholas S. Schorsch, and William M. Kahane: | AUDRA J. SOLOWAY (Daniel S. Sinnreich, Naomi D. Morris, *on the brief*), Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY. |

Appeal from the United States District Court for the Southern District of New York (Lorna G. Schofield, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Carolyn St. Clair-Hibbard appeals from an opinion and judgment of the district court (Schofield, *J.*) dismissing her Second Amended Complaint for failure to state a claim. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

Plaintiff is a shareholder of American Finance Trust, Inc. ("AFIN"), a real estate investment trust ("REIT") incorporated under the laws of Maryland. Since its founding, AFIN has been "externally managed," meaning that its day-to-day operational, managerial, and financial activities are run by an external advisor. In this case, that advisor is American Finance Advisors, LLC ("AF Advisors"), which is a wholly-owned subsidiary of AR Global Investments, LLC ("Global"). Nicholas S. Schorsch and William M. Kahane are significant shareholders of Global.

In September 2016, AFIN executed a definitive merger agreement to acquire another REIT for a combination of cash and stock. In connection with the proposed merger, AFIN and AF Advisors agreed to a new advisory agreement (the "New Advisory Agreement"), which would permit AFIN to internalize the services offered by AF Advisors for a fee. Execution of the New Advisory Agreement was contingent upon AFIN's shareholders approving the proposed merger.

Over late 2016 and early 2017, AFIN issued proxy materials soliciting shareholder votes in favor of the two agreements. Among other things, AFIN

3

stressed that the merger agreement and the New Advisory Agreement would provide AFIN with a path to internalizing its management structure, enhanced liquidity, and the possibility of a future public listing (although AFIN was publicly registered at that time, it did not begin trading publicly until July 2018).

On February 13, 2017, its shareholders approved the merger and the New Advisory Agreement.   Thereafter, Plaintiff sued, alleging that the proxy materials were materially misleading, and that AF Advisors breached its fiduciary duty to AFIN and AFIN's shareholders.

## *Discussion*

We review the district court's grant of a motion to dismiss *de novo*, "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor."   *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013) (internal quotation marks omitted).   In so doing, we may also consider documents attached to or incorporated by reference in the complaint, legally required public disclosure documents filed with the SEC, and documents on which the plaintiff relied in bringing suit.   *Id*.

4

## I.   Section 14(a) Proxy Fraud Claim

To state a claim under Section 14(a) of the Securities Exchange Act of 1934, and Rule 14a-9 promulgated thereunder, a shareholder must, at the very least, identify a materially misleading misrepresentation or omission in the proxy materials. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 383–85 (1970); *see also Bond Opportunity Fund v. Unilab Corp.*, 87 F. App'x 772, 773 (2d Cir. 2004). A fact is material if there is "a substantial likelihood" that it would have "significantly altered the total mix of information made available" to the market. *Seinfeld v. Gray*, 404 F.3d 645, 650 (2d Cir. 2005) (internal quotation marks omitted). Here, Plaintiff has not identified any materially misleading misrepresentations or omissions in AFIN's proxy materials; as a result, her proxy fraud claims must be dismissed.

First, the proxy materials did not mislead AFIN's shareholders about the desirability of AFIN's external management structure. Plaintiff admits that externally managed REITs have been generally disfavored in the industry "as far back as 2007." J. App'x at 123–24. In fact, credit rating agencies, industry analysts, and the SEC have all issued bulletins since then warning investors that

5

externally managed REITs often labor under significant conflicts of interest and trade at a discount as compared to their internally managed peers. AFIN had no duty to disclose information that its shareholders (and the general market) already knew. *See Seibert v. Sperry Rand Corp.*, 586 F.2d 949, 952 (2d Cir. 1978). Even so, AFIN warned its shareholders about the drawbacks of its management structure, having disclosed (multiple times) that AF Advisors face "significant conflicts[,] . . . which could negatively impact [AFIN's] operating results." J. App'x at 513.

Second, AFIN exhaustively described the internalization fee and its possible effect on the company. AFIN both distributed the New Advisory Agreement to its shareholders and summarized its terms, explaining what the internalization fee was and how it would be calculated. AFIN also warned that the internalization terms could harm the company from a financial perspective by, among other things, "discourag[ing] a third party from making an offer for [AFIN] at a premium price." J. App'x at 250.

Lastly, AFIN did not mislead its shareholders as to the expected trading price of its shares in the event of a public listing following the merger. As already discussed, AFIN's shareholders can be assumed to have known, based on public

6

information and AFIN's disclosures, that AFIN's external management structure and the associated cost of internalization could cause the company to trade at a discount. *See Kahn v. Wien*, 842 F. Supp. 667, 676 (E.D.N.Y.), *aff'd*, 41 F.3d 1501 (2d Cir. 1994) ("A proxy statement need not negatively characterize all the facts that are disclosed or expressly verbalize all adverse inferences from those facts."). Moreover, AFIN expressly cautioned its shareholders that there was no guarantee that its shares, if publicly listed, would trade in line with AFIN's estimated net asset value. Indeed, Plaintiff essentially conceded that this risk was adequately disclosed when she filed her complaint before AFIN was publicly listed. *See* J. App'x at 143–44 ("Continuation and the virtual permanence of the external management structure at AFIN will adversely affect AFIN's plans for a public listing and in any public listing the market value will likely reflect a discount for external management and a further discount due to the enormous internalization penalty."). If Plaintiff had enough information to predict that AFIN might trade at a discount, so did AFIN's other shareholders.

Accordingly, Plaintiff has failed to state a claim under Section 14(a) or Rule 14a-9. Plaintiff's secondary claim for control person liability under

Section 20(a) of the Exchange Act must also be dismissed. *See Rombach v. Chang*, 355 F.3d 164, 177–78 (2d Cir. 2004).

## II.    Breach of Fiduciary Duty Claim

Under Maryland law,[1] whether a claim for breach of fiduciary duty is direct or derivative in nature depends on (1) the nature of the wrong alleged and (2) the relief sought. *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 425 (Md. 2009). "To assert a direct claim, a plaintiff must have suffered a 'distinct injury' separate from any harm suffered by the corporation." *Oliveira v. Sugarman*, 152 A.3d 728, 742 (Md. 2017). Likewise, the remedy sought "must benefit the shareholder as an individual, not the corporate entity." *Id.* Here, both the nature of Plaintiff's alleged injury and her proposed remedy demonstrate that her breach of fiduciary duty claim is derivative, which forecloses her from proceeding directly against AF

---

[1] Although the New Advisory Agreement states that it "shall be construed and interpreted in accordance with the laws of the State of New York . . . without regard to the principles of conflicts of law thereof," J. App'x at 887, the law of AFIN's state of incorporation, Maryland, applies to the threshold issue of Plaintiff's standing to sue, *see NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 743 n.2 (2d Cir. 2014); *Howe v. Bank of N.Y. Mellon*, 783 F. Supp. 2d 466, 476 (S.D.N.Y. 2011) ("Plaintiff cites no law to support his contention that a [contractual] choice of law provision can govern standing, which is . . . governed by the laws of the state of incorporation.").

8

Advisors.[2]

Plaintiff alleges that AF Advisors breached its fiduciary duties to AFIN and its shareholders by "destroy[ing] AFIN shareholder value; imped[ing] a public listing at fair value; and misappropriat[ing] AFIN value from shareholders." J. App'x at 148. In a nutshell, the harm that Plaintiff seeks to redress is AF Advisors forcing AFIN into an onerous contract that sapped value from AFIN, thereby depressing its share price. Plaintiff's only "personal" injury then is the decrease in the value of her shares. But as Maryland law makes clear, a mere "decline in stock value does not give rise to a direct claim." *Oliveira*, 152 A.3d at 748.

The relief that Plaintiff seeks only further supports this conclusion. Specifically, Plaintiff requests "damages," "[r]escinding the [New] Advisory Agreement and forcing [AF Advisors] to disgorge the benefits received as a result," or, alternatively, "[d]eclaring void the non-cancellable terms and 20 year

_____

[2] To be sure, a claim "belonging to [a shareholder] personally" may be prosecuted directly in most instances. *Oliveira*, 152 A.3d at 742 n.15 (quoting *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1126–27 (Del. 2016)). But where a shareholder seeks to vindicate a breach of a fiduciary duty – even where, as here, that fiduciary duty is owed to shareholders – she may proceed directly only if she has suffered an injury distinct from the corporation. *See id.*; *see also Citigroup*, 140 A.3d at 1138 n.66 (acknowledging that even where a fiduciary duty is owed to a shareholder, the shareholder must suffer an injury distinct from the corporation to bring a direct claim).

term of the [New] Advisory Agreement and the internalization fee." J. App'x at 148–49. Each of these remedies would flow to AFIN, not its shareholders.

Perhaps not surprisingly, Plaintiff pivots to reframe the direct/derivative analysis by arguing that she is pursuing a "dilution" claim, which Maryland courts have recognized may sometimes be prosecuted directly. *E.g.*, *Oliveira*, 152 A.3d at 747 (noting that a stock dilution claim can "support a direct shareholder claim under some circumstances"). Dilution occurs when existing shareholders' economic or voting rights are diluted by the corporation's issuance of new shares. But while Plaintiff's complaint makes a single stray reference to the merger being "dilutive," J. App'x at 140, her case has nothing to do with share dilution. Indeed, she "fail[s] to allege any facts detailing the impact of such dilution" such as "by [indicating] how much [her] shares were allegedly diluted, what effect that dilution had on [her] voting power, if any, or what financial loss [she] might have suffered due to such dilution." *Oliveira*, 152 A.3d at 749–50.

To the extent that Plaintiff's breach of fiduciary duty claim can be styled as one for the breach of the duty of candor, that too fails. Setting aside whether such a claim even exists under Maryland law, it suffers the same defect as Plaintiff's

10

proxy fraud claim: Plaintiff has not identified any materially misleading misrepresentations or omissions in the proxy materials.

As a result, Plaintiff has not alleged a cognizable claim for breach of fiduciary duty. Her secondary aiding and abetting claim must also be dismissed. *See Schandler v. N.Y. Life Ins. Co.*, No. 09-cv-10463 (LMM), 2011 WL 1642574, at *13 (S.D.N.Y. Apr. 26, 2011); *Schlossberg v. Nadel*, C.A. No. 16-100 (PX), 2016 WL 4205772, at *5 (D. Md. Aug. 10, 2016).

## *Conclusion*

We have reviewed the remainder of Plaintiff's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11