[994 NYS2d 64]

MATTHEW SERINO et al., Plaintiffs, v KENNETH LIPPER, Appellant, and PRICEWATERHOUSECOOPERS LLP, Respondent, et al., Defendants.

First Department, September 30, 2014

### APPEARANCES OF COUNSEL

*Morvillo Abramowitz Grand Iason & Anello P.C.*, New York City (*Elkan Abramowitz, Benjamin S. Fischer* and *Dana M. Delger* of counsel), for appellant.

*Orrick, Herrington & Sutcliffe LLP*, New York City (*J. Peter Coll, Jr., Steven J. Fink* and *Kristen R. Fournier* of counsel), for respondent.

### OPINION OF THE COURT

GISCHE, J.

In this complex, multiparty litigation, extending over a period of 12 years, the only issues awaiting final adjudication are defendant Kenneth Lipper's cross claims against codefendant PricewaterhouseCoopers LLP (PwC), sounding in fraud,

negligence/malpractice, breach of contract, breach of fiduciary duty,[1] and negligent misrepresentation.[2] The motion court granted PwC's motion for summary judgment dismissing all of the cross claims and denied Lipper's cross motion for partial summary judgment on the fraud claim (2013 NY Slip Op 30871[U] [2013]). We modify the judgment to reinstate the cross claims only to the extent indicated herein, and otherwise affirm the motion court's dismissal of the cross claims and denial of Lipper's motion for partial summary judgment on his cross claim for fraud.

The underlying case was originally commenced as a putative class action by former investors in the hedge funds operated by all defendants except PwC. Lipper & Company, Inc. (Lipper, Inc.),[3] an asset investment vehicle founded by Kenneth Lipper, formed hedge funds that invested in convertible securities. Lipper, through his various business entities, remained integrally involved in the operation and ownership of the funds, and his personal wealth was tied to them. Edward Strafaci, along with Abraham Biderman, was responsible for the day to day operation of the funds under Lipper's supervision. Strafaci, who was ultimately responsible for assigning values to the securities held by the funds, committed criminal securities fraud by grossly inflating their value (see Serino v Lipper, 47 AD3d 70, 73 n 2 [2007] [Serino I]). Strafaci's overvaluation of the underlying securities ultimately led to the funds' collapse.

In 1989 Lipper, on behalf of the funds, hired PwC to audit the annual financial statements, which included testing the value of the securities portfolios. Annual audits were conducted through 2000, in which 66.1% to 74% of the portfolio of convertible secu-

---

**1.** PwC asserts that the claim for breach of fiduciary duty was dismissed by the court on the earlier motion to dismiss and that that determination was never appealed. The decision on that prior appeal however speaks to the reinstatement of all of Lipper's noncontribution cross claims, which would include breach of fiduciary duty (Serino v Lipper, 47 AD3d 70, 79 [1st Dept 2007], lv dismissed 10 NY3d 930 [2008]).

**2.** The cross claims also originally included a claim for contribution. The motion court dismissed all of Lipper's cross claims, which necessarily included the contribution claim. The parties do not address this cross claim on appeal. We find that the motion court's dismissal of the contribution cross claim is a final and binding adjudication against Lipper disposing of that cross claim.

**3.** The order appealed from dismissed all cross claims asserted both by Kenneth Lipper individually and Lipper, Inc. However, the brief is filed only on behalf of Lipper and expressly states that Lipper, Inc. is not perfecting its appeal.

rities were valued by PwC.[4] Even though PwC's prices and Strafaci's prices for the securities differed up to 13.5% during the audit periods, each year PwC issued an unqualified audit opinion. Lipper, acting as part of the funds' management, represented to investors that the financial statements were fairly presented according to Generally Accepted Accounting Principles. Lipper nonetheless claims that he did not know that PwC's findings of value were actually below that which Strafaci had stated. On January 14, 2002, Strafaci and Michael Visovsky (who was in charge of research for the funds), abruptly resigned their employment, triggering an internal investigation of the funds. The investigation revealed that Strafaci had failed to value the securities at market value, as he was required to do under the operative partnership agreement. Lipper claims that as a result of the investigation he learned for the first time that the funds' portfolio had been overvalued anywhere from $137 to $345 million. While the issue about when Lipper knew or should have known that the value of the funds had been overstated is disputed, that factual issue cannot be resolved on this motion (*see DDJ Mgt., LLC v Rhone Group L.L.C.*, 15 NY3d 147, 155 [2010]). It is undisputed, however, that after the internal investigation was completed, the securities were immediately marked down in value, leading many limited partners to withdraw their investments (*see Williamson v Pricewaterhouse-Coopers LLP*, 9 NY3d 1 [2007]). By March 2002, the Lipper entities and the funds announced that they would be dissolving.[5]

In addition to preparing audits for the funds, PwC also prepared Lipper's personal tax returns and balance sheets and provided him with personal financial advice. Lipper claims he personally paid PwC for the services it provided to him individually. He also claims that the personal documents prepared by PwC ascribe substantial values to his holdings, which were not true and known by PwC not to be true, because PwC had audited the value of the underlying securities. Lipper maintains that had he known that the values were overstated at an earlier point in time, he would have acted to stem the losses that

4. The underlying action only concerns the audits beginning 1996 through 2000.

5. Lipper commenced a liquidation proceeding in the New York County Supreme Court (*Lipper Holding, LLC*, Sup Ct, NY County, index No. 603653/2002). Richard Williamson was appointed as Successor Liquidating Trustee and that matter has been resolved, including the claims made by the funds directly against PwC.

ensued. He also claims he relied on these valuations in making personal financial decisions. In particular, under the terms of a divorce settlement with his ex-wife, Lipper had the option of gifting a certain portion of his holdings to his daughters. He claims that based upon PwC's implicit confirmation of the value of his personal holdings, he elected to make the gift, which required that he pay over $6 million in gift tax.

Lipper seeks three categories of damages in connection with his cross claims. He seeks the lost value of his share of the Lipper entities, lost earnings that he attributes to his damaged reputation in the financial investment community and $6 million reflecting the gift tax payment he made on the inflated value of his holdings.

A central issue in this appeal is whether all of Lipper's cross claims are barred, as a matter of law, because they are actually derivative claims, belonging only to the funds.

■ We reject at the outset Lipper's argument that footnote 8 in our prior decision in this case *Serino I* (47 AD3d at 77 n 8) binds us to deny summary judgment dismissing the cross claims at this time. *Serino I* was an appeal from a motion to dismiss the complaint and the footnote addressed different issues from those now raised. On this appeal, we view Lipper's claims according to a summary judgment legal standard and on a more fully developed record. *Serino I* provides no impediment to our reaching the merits of the issues presently before us (*see Friedman v Connecticut Gen. Life Ins. Co.*, 30 AD3d 349 [1st Dept 2006], *mod on other grounds* 9 NY3d 105 [2007]).

It is black letter law that a stockholder has no individual cause of action against a person or entity that has injured the corporation. This is true notwithstanding that the wrongful acts may have diminished the value of the shares of the corporation, or that the shareholder incurs personal liability in an effort to maintain the solvency of the corporation (*Citibank v Plapinger*, 66 NY2d 90, 93 n [1985]; *Niles v New York Cent. & Hudson Riv. R.R. Co.*, 176 NY 119 [1903]), or that the wrongdoer may ultimately share in the recovery in a derivative action if the wrongdoer owns shares in the corporation (*Glenn v Hoteltron Sys.*, 74 NY2d 386 [1989]). An exception exists, however, where the wrongdoer has breached a duty owed directly to the shareholder which is independent of any duty owing to the corporation (*Abrams v Donati*, 66 NY2d 951 [1985]; *General Rubber Co. v Benedict*, 215 NY 18 [1915]). This is a narrow exception, and Lipper's cross claim must be factually supportable by more than

complaints that conflate his derivative and individual rights (*Abrams*, 66 NY2d at 953-954). In addition, Lipper may not obtain a recovery that otherwise duplicates or belongs to the corporation (*Herbert H. Post & Co. v Sidney Bitterman, Inc.*, 219 AD2d 214, 225 [1st Dept 1996]).

Recognizing the difficulty in determining whether a claim is direct or derivative in the recent case of *Yudell v Gilbert* (99 AD3d 108 [1st Dept 2012]), this court adopted the test developed by the Supreme Court of Delaware in *Tooley v Donaldson, Lufkin & Jenrette, Inc.* (845 A2d 1031, 1039 [Del 2004]) as a common sense approach to resolving such issues. We held that the Delaware test is consistent with existing New York State law. In order to distinguish a derivative claim from a direct one, the court considers "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)" (*Yudell*, 99 AD3d at 114, quoting *Tooley*, 845 A2d at 1033). If there is any harm caused to the individual, as opposed to the corporation, then the individual may proceed with a direct action (*Gjuraj v Uplift El. Corp.*, 110 AD3d 540 [1st Dept 2013]). On the other hand, even where an individual harm is claimed, if it is confused with or embedded in the harm to the corporation, it cannot separately stand (*Abrams* at 953-954 [conspiracy to terminate employment of corporation's president mixed with claim for diversion of corporate assets was properly dismissed as a derivative action]; *Yudell* at 115 [the plaintiff's direct claims, embedded in claims for partnership waste and mismanagement, were properly dismissed as derivative claims]; *Hahn v Stewart*, 5 AD3d 285 [1st Dept 2004] [claims that the corporation's damaged reputation diminished the value of former corporate shareholder's shares dismissed on the grounds that such allegations plead a wrong to the corporation only, for which a shareholder can only sue derivatively]).

Lipper paid for and obtained personal services from PwC, which he argues supports an independent duty owed to him by PwC. Lipper claims that PwC's services were deficient because PwC accepted values of his personal wealth, notwithstanding that PwC knew those values were incorrect because it had audited the underlying assets. Under *Yudell*, Lipper's factual predicate will not support an independent duty exception, unless the harm suffered and the relief sought belongs to him individually.

■ Applying the *Yudell* test, it is clear that Lipper's claim for damages based on the lost value of his holdings is derivative. The lost value of an investment in a corporation is quintessentially a derivative claim by a shareholder (*O'Neill v Warburg, Pincus & Co.*, 39 AD3d 281 [1st Dept 2007]; *Hahn* at 285-286). In this respect, Lipper's damages are no different from losses suffered by any other investor in the funds and the claims are supported by the same proof. The motion court correctly held that this aspect of relief sought by Lipper is not viable, as a matter of law.

■ We also hold that Lipper's claim for lost earning capacity is barred because it is inextricably embedded in the derivative claim. While certainly the funds would have no right to recover for injury to Lipper's reputation in the financial community, it is the scandal that befell the funds as a result of the overvaluation and perceived mismanagement that could have negatively impacted Lipper's reputation. Lipper's argument, that had PwC informed him about the overvaluation at an earlier time he could have stemmed the damage, demonstrates this point. Lipper's ability to have done damage control derives from his right to participate in management of the funds, not as a result of simply being an investor. In *Hahn v Stewart*, we held that the damage to the reputation of the corporate chairman and chief executive officer resulting from an insider trading scandal was likewise part of a derivative claim that should be dismissed (*id.* at 285-286). Lipper's claims based on the damage to his reputation in the financial industry are indistinguishable from the embedded claims in *Hahn*.

■ Lipper's claim regarding the gift taxes he paid, however, is an independent claim deriving from an independent duty, which survives the *Yudell* test. Nor is this claim dismissible as an embedded claim. Based upon PwC's individual financial services and advice, Lipper maintains he took actions regarding his personal holdings that were adverse to him because the taxes he paid were based upon inflated and incorrect values. We disagree with the trial court's conclusion that Lipper's cross claim for gift taxes against PwC is per se barred because Lipper failed to seek a refund from the IRS. *United States v Dalm* (494 US 596 [1990]), relied upon by the motion court, pertains to taxpayer refund actions brought against the United States. It is not a limitation on damages in an action between private parties (*see e.g. Fielding v Kupferman*, 65 AD3d 437 [1st Dept 2009]). We also disagree that the doctrine of in pari delicto, as a matter of

law, bars Lipper's individual claims. It is well established that the court will not intercede to resolve a dispute between two wrongdoers, and that principles of agency law create a presumption that the wrongdoing of an agent can be imputed to the principal (*Kirschner v KPMG LLP*, 15 NY3d 446 [2010]). At bar, however, Strafaci was the agent of the funds. While an agency relationship may exist among Strafaci and some of the Lipper entities, it is less clear whether Strafaci was an agent for Kenneth Lipper, individually (*see Weinberg v Mendelow*, 113 AD3d 485 [1st Dept 2014]).

Nonetheless, we find that recoupment of taxes paid violates New York's out-of-pocket damages rule applicable to both the fraud and negligent misrepresentation cross claims Lipper has asserted (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 423 [1996]).[6] Pursuant to the New York rule, recovery is denied where it leaves the claimant in a better position than the claimant would have been in the absence of wrongdoing (*Gaslow v KPMG LLP*, 19 AD3d 264 [1st Dept 2005], *lv dismissed* 5 NY3d 849 [2005]). Lipper contends that he would not have made the gifts to his daughters if he had known the true value of his holdings. The payment of taxes was a consequence of making that gift. The relief he seeks would put him in a better financial position than had the claimed wrongdoing not occurred because it would, in effect, allow him to pass wealth on to his children without any tax impact.

Although the out-of-pocket damages rule bars the recovery of gift taxes paid in connection with Lipper's cross claims for fraud and negligent misrepresentation, it does not bar recovery of such damages in connection with his cross claims for negligence/ malpractice, breach of contract or breach of fiduciary duty (*Fielding v Kupferman*, 65 AD3d 437 [2009]). In accordance with this decision, therefore, Lipper's cross claims against PwC are only reinstated to the extent that he can seek recovery of the gift taxes he paid on the cross claims sounding in negligence/ malpractice, breach of contract and breach of fiduciary duty.

Having affirmed the motion court's dismissal of Lipper's fraud cross claim in total, we further affirm the motion court's denial

---

**6.** The out-of-pocket damages rule would also prohibit the recoupment of lost earning ability for fraud and negligent misrepresentation (*Rather v CBS Corp.*, 68 AD3d 49 [1st Dept 2009], *lv denied* 13 NY3d 715 [2010]). Because we are holding that all cross claims for lost earning capacity are dismissed, we express this as an independent and separate basis for dismissing these cross claims.

of Lipper's cross motion for partial summary judgment on his fraud cross claim.

Because the issues decided by this Court fully dispose of the matter, we do not reach any of the other arguments raised by the parties.

Accordingly, the judgment of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered May 10, 2013, insofar as appealed from as limited by the briefs, dismissing all cross claims of defendant Kenneth Lipper against defendant PricewaterhouseCoopers LLP, should be modified, on the law, to reinstate so much of Lipper's cross claims for negligence/malpractice, breach of contract and breach of fiduciary duty as seek recovery of gift taxes paid, and otherwise affirmed, without costs. The appeal from the order of the same court and Justice, entered April 25, 2013, which, insofar as appealed from as limited by the briefs, granted PwC's motion for summary judgment dismissing Kenneth Lipper's cross claims and denied his cross motion for partial summary judgment on his fraud claim against PwC, should be dismissed, without costs, as subsumed in the appeal from the judgment.

Tom, J.P., Renwick and Clark, JJ., concur.

Judgment, Supreme Court, New York County, entered May 10, 2013, modified, on the law, to reinstate so much of defendant Lipper's cross claims for negligence/malpractice, breach of contract and breach of fiduciary duty as seek the recovery of gift taxes, and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered April 25, 2013, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.