23-1202-bk
*In re: 305 East 61st St. Grp. LLC*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

―――――――――――

AUGUST TERM 2023
No. 23-1202-bk

IN RE:
**305 EAST 61ST STREET GROUP LLC,**
*Debtor.*

―――――――――――

**LITTLE HEARTS MARKS FAMILY II L.P.,**
*Appellant,*

v.

**JASON D. CARTER, 61 PRIME LLC,**
*Appellees.*

―――――――――――

On Appeal from the U.S. District Court
for the Southern District of New York

―――――――――――

ARGUED: JUNE 17, 2024
DECIDED: MARCH 4, 2025

―――――――――――

Before:     LYNCH, CARNEY, and MENASHI, *Circuit Judges*.

Plaintiff-Appellant Little Hearts Marks Family II L.P. was a member of 305 East 61st Street Group LLC, a company organized to purchase a building and convert it into a condominium. Defendant-Appellee 61 Prime LLC was the majority member and manager of the company, and Defendant-Appellee Jason D. Carter was the manager and sole member of Prime. In 2021, the company filed for bankruptcy and eventually sold the building to a different company that Carter had created. The plan of liquidation established a creditor trust with the exclusive right to pursue causes of action that belong to the debtor's estate. After the sale of the building, Little Hearts sued Prime and Carter for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Little Hearts sought damages representing its lost capital investment in the company and the loss of its rights under the Operating Agreement, including the right to use and develop designated units in the building.

We affirm the judgment insofar as the bankruptcy and district courts dismissed the claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty. These claims belonged to the company and could be asserted only by the creditor trustee. We vacate the judgment insofar as the bankruptcy and district courts dismissed the claims for breach of contract and breach of the implied covenant of good faith and fair dealing. These claims seek to vindicate rights belonging directly to Little Hearts under the Operating Agreement and may proceed. The unjust enrichment claim, meanwhile, must be dismissed as duplicative of the contract claims. We remand for further proceedings consistent with this opinion.

ANDREW R. GOLDENBERG, Levy Goldenberg LLP, New York, New York, *for Plaintiff-Appellant*.

GERARD S. CATALANELLO (James J. Vincequerra, Kimberly J. Schiffman, Christopher J. Borchert, *on the brief*), Alston & Bird LLP, New York, New York, *for Defendants-Appellees*.

MENASHI, *Circuit Judge*:

Plaintiff-Appellant Little Hearts Marks Family II L.P. ("Little Hearts") was a member of 305 East 61st Street Group LLC, a company organized to purchase a building at 305 East 61st Street in Manhattan and convert it into a condominium. Defendant-Appellee 61 Prime LLC ("Prime") was the majority member and manager of the company, and Defendant-Appellee Jason D. Carter was the manager and sole member of Prime. In 2021, 305 East 61st Street Group filed for bankruptcy and eventually sold the building to another company that Carter had created.

The plan of liquidation established a creditor trust with the exclusive right to pursue legal claims that belonged to the estate of 305 East 61st Street Group. After the sale of the building, Little Hearts filed its own lawsuit against Prime and Carter in state court, asserting claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Little Hearts sought damages for its lost capital investment in the company and the loss of its rights under the Operating Agreement, which had granted Little Hearts the right to use and develop designated units in the

building. Carter and Prime removed the action to the bankruptcy court.

We affirm the judgment insofar as the bankruptcy and district courts dismissed the claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty. These claims were derivative of claims that belonged to the debtor company and therefore could be asserted only by the creditor trustee. We vacate the judgment insofar as the bankruptcy and district courts dismissed the claims for breach of contract and for breach of the implied covenant of good faith and fair dealing. These were direct claims that sought to vindicate contractual rights that belonged to Little Hearts. The unjust enrichment claim, meanwhile, must be dismissed as duplicative of the contract claims. We remand for further proceedings consistent with this opinion.

## BACKGROUND

### I

On August 15, 2016, Mitchell Marks—the principal of Little Hearts—signed a contract to purchase "a 65,000 square foot warehouse at 305 East 61st Street, between Second Avenue and a ramp off the 59th Street bridge," for $40,000,000. App'x 27. Marks then organized a group of real estate investors to finance the purchase and to convert the building into a condominium. The vehicle for doing so was 305 East 61st Street Group, a limited liability company with four members: (1) Prime, which owned a 50 percent interest; (2) Little Hearts, which owned 30 percent; (3) Onestone 305, LLC ("Onestone"), which owned 10 percent; and (4) an individual investor named Thaddeus Pollock with a 10 percent ownership interest.

The purchase was financed by a $20,000,000 acquisition loan from Banco Popular North America and a capital investment of

4

$21,328,000 from the members. Construction work on the building was to be financed with an additional loan of $10,000,000 from Banco Popular.[1] The acquisition and construction loans were secured by a single mortgage on the building in favor of Banco Popular, which was guaranteed by Little Hearts, Prime, Marks, and Carter. Little Hearts, Onestone, and Pollock each assumed responsibility for $3,750,000—or one-eighth of the $30,000,000 in total indebtedness to Banco Popular—with Prime assuming responsibility for the remaining $18,750,000 or five-eighths.

The members executed an Operating Agreement to govern the affairs of the company. Little Hearts was designated the manager of the company and, in the event that Little Hearts resigned or was removed as manager, Prime held "the right to assume the duties of [Little Hearts] as [m]anager … or to designate a [m]anager in the place and stead of [Little Hearts]." App'x 75. The Operating Agreement assigned each member certain floors of the building on which it was authorized to perform interior work. Little Hearts received "the right to retain, use, occupy, develop and acquire the condominium units consisting of the (i) basement/cellar and first floor, and (ii) 10th floor and roof, of the [b]uilding." *Id.* at 64. A similar provision assigned Prime the fourth through seventh floors and the ninth floor of the

---

[1] The complaint states at one point that the $10,000,000 investment in construction was funded with a loan from Banco Popular of $5,186,000 and an investment from the members of $4,924,000. *See* App'x 28. But it then states that the members "signed promissory notes for the Construction Loan totaling $10,000,000." *Id.* at 29. The percentages of the mortgage assigned to each member indicate that the total mortgage was $30,000,000—$20,000,000 for the acquisition loan and $10,000,000 for the construction loan.

building. The Operating Agreement was subsequently amended to give Little Hearts the right to the second floor as well.

With respect to the units on their assigned floors, Little Hearts and Prime also had the right to "perform any alterations," to "sell all or any part," and to "lease, sublease, assign, and use, without consent and without the payment of any fees or expenses to the [c]ompany or when in Condominium Ownership, to the Board of Managers." *Id.* at 70. Once the condominium plan was approved, Little Hearts and Prime would have the option either to acquire the units on their designated floors or to market those units and share in the proceeds. The proceeds from any sale of condominium units by Little Hearts or Prime would first be applied to pay off the Banco Popular loans, then be directed to settle closing expenses in connection with the sale, next be put toward "the payment of all sums due hereunder," and finally be remitted to the member who sold the unit. *Id.* at 86. Onestone and Pollock received the option to acquire the units on their designated floors but not the right to share in the proceeds of any sale or lease of the units.

Little Hearts received additional rights with respect to its units in the cellar and on the first floor—part of the so-called "Marks Units"—that the other members did not receive. At the closing of the acquisition of the building, the company as landlord entered into a lease with Little Hearts as tenant for the cellar and the first floor. A rider to the lease gave Little Hearts the right to sublease these floors without the consent of the company and to install "signs, lights, advertisements or notices on the exterior of the building." *Id.* at 462. Little Hearts also had the right, with Prime's consent, to make alterations to the roof "financed by the capital of the [c]ompany." *Id.* at 72. Additionally, Little Hearts had the right to subdivide the tenth floor into two separate units without the consent of the company.

6

Little Hearts alleges that "[i]n reliance on the rights granted to [it] under the Operating Agreement, [it] spent millions of dollars renovating each of the Marks Units to use, lease, or sell." *Id.* at 30. Little Hearts also "entered into a valuable sublease, as sub-landlord, with non-party Acqua Ancient Bath New York, Inc. ("Spa"), as sub-tenant, for the Ground Floor Unit for a term of 15 years." *Id.*

In the spring of 2018, "Prime refused to pay $62,500 of its original subscription to the [c]ompany," and the company sued Prime in New York state court. *Id.* at 31. In response, Prime and Carter brought a separate action to remove Little Hearts as manager and moved *ex parte* for a temporary restraining order based on allegations that Little Hearts describes as "grossly false." *Id.* The state court granted the TRO and installed Prime as manager of the company. According to the allegations of the complaint, Prime mismanaged the company. "[I]n the two years that followed the TRO, Carter and Prime did not advance any construction work, renew building permits, advance the condominium offering plan, or correct the stop work order issued by the City of New York for the illegal work commenced by Defendants." *Id.* at 34-35. Little Hearts further alleges that Prime and Carter interfered with its sublease to the Spa. Prime and Carter allegedly "[c]ut the power and water to the Ground Floor Unit," "locked the Spa out of the Ground Floor Unit" in violation of a court order, "[v]iolated a temporary restraining order and court order dated August 23, 2018 directing Defendants to re-install power and water to the Spa's ground floor unit," and "[c]aused the Spa to sue the [c]ompany for … millions of dollars." *Id.* at 35-36.

The Banco Popular loans matured in December 2018, and Prime "failed to pay [its] 5/8ths portion of the [m]ortgage." *Id.* at 36-37. "Instead, Carter attempted to refinance the [m]ortgage with commercially unreasonable terms from a personal friend." *Id.* at 37.

"Little Hearts presented multiple refinancing proposals at commercially reasonable terms, which Carter unreasonably refused to consider." *Id.* According to the complaint, "Carter tried to pressure Little Hearts to accept his refinancing proposal … and called Marks telling him 'there is only going to be one winner here, and it's not going to be you—give in while there is something still left in it for you.'" *Id.* Little Hearts alleges that "Carter did not want the [m]ortgage paid so he could purchase the [b]uilding." *Id.* at 37-38. After the company defaulted, the LLC that held the loans began foreclosure proceedings.

In its state action, Prime sought a preliminary injunction to maintain the removal of Little Hearts as manager. The state court held a hearing on the request in February 2019. During a subsequent session in May 2019, the presiding judge indicated not only that Prime was not entitled to a preliminary injunction but that Little Hearts was entitled to have a receiver appointed. On June 10, 2019, before the state court could resolve the request for the preliminary injunction, Prime as manager caused the company to file for bankruptcy under Chapter 11 in the Southern District of New York. According to the complaint, "[t]he Bankruptcy Proceeding was unnecessary as the [c]ompany was solvent. The value of the [c]ompany's [sole] asset, the [b]uilding, far exceeded the [c]ompany's liabilities." *Id.* at 34.

Little Hearts alleges that Prime initiated the bankruptcy proceeding solely to forestall an adverse ruling in the state court litigation. On the same day that the company filed for bankruptcy, Carter formed a new entity called Lazarus 5, LLC. The complaint alleges that "Lazarus 5 was [formed] solely for the purpose of purchasing the [m]ortgage … and then forcing a sale of the [b]uilding to Lazarus 5." *Id.* at 39. A bankruptcy trustee was appointed and submitted a plan of liquidation in May 2020. The plan provided for

the sale of the building to Lazarus 5 and established the creditor trust, the "sole purpose" of which was to liquidate the remaining assets of the estate—including legal claims—and to distribute the proceeds to the bankruptcy claimants. Prime App'x 20. The plan permanently enjoined actions involving property of the estate brought by anyone other than the creditor trustee. At a bankruptcy sale held on August 12, 2020, Lazarus 5 purchased the mortgage and acquired the building for approximately $50,000,000.

## II

In June 2019, Little Hearts commenced an adversary proceeding in the bankruptcy court. Little Hearts, Carter, and the creditor trustee entered into mediation. When the mediation failed, Little Hearts sued in New York state court. The defendants removed the action to the bankruptcy court pursuant to Bankruptcy Rule 9027(a)(3).

The complaint asserted six causes of action. Counts I and II asserted claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty. Counts III and IV asserted claims for breach of contract and for breach of the implied covenant of good faith and fair dealing. Count V advanced a theory of *alter ego* liability against Carter, which was styled as a separate cause of action, and Count VI asserted a claim for unjust enrichment. The complaint alleged that Prime and Carter used their positions as managers "to squeeze out Little Hearts and transfer the [b]uilding to themselves." App'x 25. Little Hearts claimed damages of "at least $48,052,000 in lost capital and the loss of valuable rights afforded to [Little Hearts] in the Operating Agreement, including the right to retain, use, occupy and develop" the Marks Units. *Id.* at 26 (internal quotation marks and alterations omitted).

9

The bankruptcy court dismissed the complaint in its entirety. The bankruptcy court held that the claims asserted in the complaint were derivative of injuries to the debtor. "As derivative claims, the causes of action belonged to the Debtor and[,] pursuant to the terms of the Debtor's plan and the Creditor Trust Agreement, are now vested with the [c]reditor [t]rust." *In re 305 E. 61st St. Grp. LLC*, 644 B.R. 75, 90 (Bankr. S.D.N.Y. 2022). Little Hearts argued that its claims were based on its own contractual rights with respect to the Marks Units. The bankruptcy court concluded that "[t]he Marks Units were not distinct property rights or interests separate from the Plaintiff's investment in the Debtor" but rather that the assignment of specific units to each member "represented an agreement amongst the [m]embers to reflect their membership interests in the Debtor." *Id.* at 91. The district court affirmed the judgment of the bankruptcy court. *See* App'x 861-75. This appeal followed.

## DISCUSSION

The plan of liquidation prohibits anyone other than the creditor trustee from pursuing legal claims belonging to the debtor's estate under 11 U.S.C. § 541(a)(1). For that reason, Little Hearts may not maintain its claims if those claims were part of the bankruptcy estate when the debtor filed for bankruptcy. To resolve that issue, we ask whether the claims Little Hearts asserts are derivative or direct under New York law. "[I]f, under state law, a cause of action belongs to the debtor or if 'rights of action exist against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy,' those actions properly are asserted by the bankruptcy trustee" or by the debtor in possession—and such claims cannot be maintained by individual creditors. *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 697 (2d Cir. 1989)

10

(alteration and citation omitted) (quoting *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1343 (7th Cir. 1987)).

"We exercise plenary review over a district court's affirmance of a bankruptcy court's decisions." *DuVall v. County of Ontario*, 83 F.4th 147, 150 (2d Cir. 2023) (quoting *Gasson v. Premier Cap., LLC*, 43 F.4th 37, 41 (2d Cir. 2022)). "In other words, we independently review the bankruptcy court's decision." *In re DiBattista*, 33 F.4th 698, 702 (2d Cir. 2022). We review *de novo* the decision to dismiss "causes of action for failure to state a claim for relief." *In re Bernard L. Madoff Inv. Secs. LLC*, 721 F.3d 54, 63 (2d Cir. 2013). In doing so, we "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).[2]

We conclude that the claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty are derivative and may be asserted only by the creditor trustee. The claims for breach of contract and for breach of the implied covenant of good faith and fair dealing, however, are direct claims that Little Hearts may pursue against Prime and Carter. The claim for unjust enrichment, meanwhile, must be dismissed as duplicative of the contract claims. Accordingly, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

---

[2] The defendants-appellees argue that Little Hearts lacks "standing" to bring derivative claims and that subject-matter jurisdiction is therefore lacking. Appellees' Br. 23. But "the inquiry into whether a claim is direct, and a plaintiff therefore has 'standing' to bring it, is not an Article III standing inquiry." *Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 125-26 (2d Cir. 2022).

# I

Whether a cause of action belongs to the bankruptcy debtor—and therefore forms a part of the bankruptcy estate—or belongs to an individual creditor "depends on an analysis of state law." *St. Paul*, 884 F.2d at 700. The parties do not dispute that the relevant state law in this case is that of New York. Historically, "New York has lacked a clear approach for determining" the "difference between direct and derivative claims." *Yudell v. Gilbert*, 949 N.Y.S.2d 380, 381 (1st Dep't 2012). For that reason, the Appellate Division, First Department, has "adopt[ed] the test the Supreme Court of Delaware developed in *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*" *Id.* (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004)). The Second and Third Departments have followed that precedent. *See, e.g.*, *Accredited Aides Plus, Inc. v. Program Risk Mgmt., Inc.*, 46 N.Y.S.3d 246, 255 (3d Dep't 2017) (quoting *Yudell*, 949 N.Y.S.2d at 384); *Mizrahi v. Cohen*, 961 N.Y.S.2d 538, 541 (2d Dep't 2013) (citing *Yudell*, 949 N.Y.S.2d at 383-84).

"[T]he decisions of New York State's Appellate Division are helpful indicators" of "how the [New York] Court of Appeals would rule." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). Those decisions are "not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *West v. AT&T Co.*, 311 U.S. 223, 237 (1940)). We are not convinced that the New York Court of Appeals would decide otherwise, so we apply the *Tooley* framework here.

In *Tooley*, the Delaware Supreme Court explained that a court must "look to the nature of the wrong and to whom the relief should go" to determine whether a corporate stockholder's claim for breach

of fiduciary duty is derivative or direct. *Tooley*, 845 A.2d at 1039. For a claim to be direct, the stockholder's alleged injury "must be independent of any alleged injury to the corporation. The stockholder must demonstrate that the duty breached was owed to the stockholder and that he or she can prevail without showing an injury to the corporation." *Id.*

"[T]he Delaware Supreme Court has clarified that 'when a plaintiff asserts a claim based on the plaintiff's own right, such as a claim for breach of a commercial contract, *Tooley* does not apply.'" *Brightstar Asia*, 43 F.4th at 122 (quoting *Citigroup Inc. v. AHW Inv. P'ship*, 140 A.3d 1125, 1139-40 (Del. 2016)). The *Tooley* test helps to evaluate claims that are "based on the defendants' alleged violation of fiduciary duties arising by law from the defendants' status in the corporate structure." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 745 (2d Cir. 2014). Before applying the *Tooley* test, therefore, "a more important initial question has to be answered: does the plaintiff seek to bring a claim belonging to her personally or one belonging to the corporation itself?" *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 180 (Del. 2015). We ask that question with respect to each claim asserted in the complaint.

## A

We begin with Counts I and II, which assert claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty. The paradigmatic claim to which *Tooley* applies is a stockholder's claim for breach of fiduciary duty. "*Tooley* and its progeny" were "intended" specifically to identify "the line between direct actions for breach of fiduciary duty suits by stockholders," on the one hand, "and derivative actions for breach of fiduciary duty suits subject to the demand excusal rules," on the other. *NAF Holdings*, 118 A.3d at 179.

Under *Tooley*, Little Hearts may maintain its claims for breach of fiduciary duty and for aiding and abetting breach of fiduciary duty only if (1) the claimed injury is "independent of any alleged injury to the corporation," (2) "the duty breached was owed to" Little Hearts, and (3) Little Hearts "can prevail without showing an injury to the corporation." *Tooley*, 845 A.2d at 1039. Counts I and II do not satisfy these criteria, so Little Hearts cannot maintain those claims directly.

Count I alleges that Prime and Carter breached a fiduciary duty to Little Hearts by having Little Hearts removed as manager, placing the company into bankruptcy, failing to advance construction projects on the building, failing to pay off the mortgage, and orchestrating the sale of the building to Lazarus 5. The complaint alleges that these actions violated Paragraphs 9(F) and 9(I) of the Operating Agreement. Paragraph 9(F) requires the manager to "devote as much time as is reasonably necessary to the management of the [c]ompany's business." App'x 71. Paragraph 9(I) requires the manager to "discharge [its] duties to the [c]ompany and to the other [m]embers in good faith and with that degree of care that an ordinarily prudent person and an experienced real estate developer in a similar position would use under similar circumstances." *Id.* at 73.

We agree with the bankruptcy court that these claims are derivative under *Tooley*. The alleged mismanagement, bad-faith bankruptcy filing, and loss of ownership of the building were injuries to the company that, in turn, caused the injury to Little Hearts. The conduct of Prime and Carter that allegedly breached a fiduciary duty to Little Hearts would also have breached a fiduciary duty to the company. Because Little Hearts cannot prevail on its claim for breach of fiduciary duty without showing an injury to the company, the claim is derivative under *Tooley*, and the plan bars Little Hearts from

14

asserting it. As the bankruptcy court observed, moreover, "[t]he claim of aiding and abetting cannot stand independent of the claim for breach of fiduciary duty," so Count II was properly dismissed along with Count I. *305 East 61st St.*, 644 B.R. at 87 n.12.

**B**

Counts III and IV, which assert claims for breach of contract and for breach of the implied covenant of good faith and fair dealing, are different. The bankruptcy court was right that all of the counts "are anchored in the Defendants['] alleged wrongful conduct as to the [c]ompany, with effects that impacted all [m]embers' rights." *Id.* at 87. But it does not follow from that observation that *Tooley* bars all the claims. When the answer to the "important initial question" is that "the plaintiff seek[s] to bring a claim belonging to her personally" rather than "belonging to the corporation," *NAF Holdings*, 118 A.3d at 180, the *Tooley* test "does not apply," *Citigroup*, 140 A.3d at 1140. When the *Tooley* test does not apply, a plaintiff may bring a direct claim even if it cannot demonstrate its injury without showing an injury to the corporation. Thus, "a suit by a party to a commercial contract to enforce its own contractual rights is not a derivative action under Delaware law, despite the fact that [the party] cannot demonstrate its injury without showing an injury to the corporation in which it owns stock." *Brightstar Asia*, 43 F.4th at 122 (internal quotation marks and citation omitted).

We made this clear in *Brightstar Asia*. The plaintiff in that case was a stockholder and former officer of a cellular telephone refurbishment business, Harvestar, that was purchased by Brightstar Asia. The complaint alleged that Brightstar Asia mismanaged Harvestar and caused the company to enter into transactions on non-market terms with its own affiliates. As a result, the plaintiff's stock

15

options under the shareholders agreement were rendered worthless. *See id.* at 117-18. Applying Delaware law, we held that the plaintiff could not bring a direct claim for breach of the conflicted-transactions provision of the shareholders agreement because that provision created a duty to the company rather than to the plaintiff individually. We held, however, that the plaintiff could bring a direct claim for breach of the implied covenant of good faith and fair dealing based on the loss of his option rights. *See id.* at 123-25. Because those rights were "individual rights" belonging to the plaintiff, the plaintiff adequately alleged "an implied covenant of good faith and fair dealing that creates a contractual duty owed to him, not to Harvestar." *Id.* at 124. Even though the plaintiff could not prevail on the claim without also showing an injury to the company, the claim was direct because it was based on a right belonging to the plaintiff personally.

The same conclusion applies in this case. We disagree with the assertion of the bankruptcy court that the interests of Little Hearts in the Marks Units "were not distinct property rights or interests separate from [its] investment in the Debtor." *305 E. 61st St*., 644 B.R. at 91. The right to "retain, use, occupy, develop, and acquire" specific units in a building does not follow automatically from ownership of a percentage of the equity in the company that owns the building. It would have been possible for an additional investor to contribute and to become a member of the company without receiving the right to occupy or to renovate specific units in the building. In fact, Little Hearts had contractual rights with respect to its designated units that the other investors lacked. It was contractually entitled to lease the cellar and first floor units from the company and to sublease those units to a commercial tenant. Because no other member of the

company had such contractual rights, the rights did not simply reflect the percentage interest of Little Hearts in the company.

New York courts applying *Tooley* have held that even if a claim is direct, it still must be dismissed "if it is confused with or embedded in the harm to the corporation." *Serino v. Lipper*, 994 N.Y.S.2d 64, 69 (1st Dep't 2014); *Yudell*, 949 N.Y.S.2d at 384 ("To the extent, if any, that plaintiffs have asserted direct claims, they are embedded in an otherwise derivative claim for partnership waste and mismanagement."); *see also Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) ("A complaint the allegations of which confuse a shareholder's derivative and individual rights will … be dismissed."). But this principle does not apply when, in light of the predicate "important initial question," the *Tooley* test does not apply. *NAF Holdings*, 118 A.3d at 180. In such a case, the plaintiff may pursue a direct claim even if he cannot state the claim without showing an injury to the corporation. *See Brightstar Asia*, 43 F.4th at 122; *NAF Holdings*, 772 F.3d at 744. If the plaintiff may pursue even a claim based on a derivative harm, he surely may also pursue a claim based on an independent harm that is "embedded in the harm to the corporation." *Serino*, 994 N.Y.S.2d at 69.

The underlying principle the New York courts have identified is that it is not enough to allege an individual harm. *See id.* ("[E]ven where an individual harm is claimed, if it is confused with or embedded in the harm to the corporation, it cannot separately stand."). The plaintiff must also allege that "the wrongdoer has breached a duty owed directly to the shareholder which is independent of any duty owing to the corporation." *Id.* Accordingly, New York courts have dismissed claims as "confused with or embedded in" derivative claims when the plaintiff has failed to allege

an independent duty owed to himself directly. *Id.*[3] These decisions aim to preserve the distinction between the rights of the individual shareholder and the rights of the corporation. *See Serino*, 994 N.Y.S.2d at 69 (explaining that a direct claim "must be factually supportable by more than complaints that conflate [the plaintiff's] derivative and individual rights") (citing *Abrams*, 66 N.Y.2d at 953-54). Here, Counts III and IV are not impermissibly confused with or embedded in harm to the corporation because those claims seek to vindicate independent contractual obligations owed to Little Hearts individually.

Because Counts III and IV are based on contractual duties—express or implied—that are owed to Little Hearts individually, the *Tooley* test does not apply and Little Hearts may assert those claims directly. The bankruptcy court therefore erred in dismissing those claims on the ground that the claims are derivative.

## C

Count VI asserts a claim for unjust enrichment. This claim is duplicative of the contract claims asserted in Counts III and IV and must be dismissed regardless of whether it is direct or derivative. Under New York law, "[a]n unjust enrichment claim is not available

---

[3] *See Serino*, 994 N.Y.S.2d at 70 (dismissing a claim for lost earning capacity as a result of reputational harm from a corporate scandal); *Yudell*, 949 N.Y.S.2d at 384 (dismissing claims based on pecuniary loss to joint venture partners resulting from a manager's "failure to collect rents and other obligations owed the joint venture"); *Abrams*, 66 N.Y.2d at 953-54 (dismissing a complaint alleging a "conspiracy to terminate [the plaintiff's] employment as president of [the corporation]" that "mixe[d] those allegations with charges of diversion of corporate assets … and the fraudulent reduction of the price of [the corporation's] products" because the plaintiff failed to allege "that defendants breached an independent duty owed [to him]").

where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). "Two claims are duplicative of one another if they 'arise from the same facts and do not allege distinct damages.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (alteration omitted) (quoting *Sitar v. Sitar*, 854 N.Y.S.2d 536, 538 (2d Dep't 2008)).

The unjust enrichment claim parallels the contract claims by resting on allegations that Prime and Carter wrongfully deprived Little Hearts of its exclusive rights with respect to the Marks Units. Count VI seeks the same damages as Counts III and IV of not less than $48,052,000 to compensate Little Hearts for "lost capital and the loss of valuable rights afforded to [Little Hearts] in the Operating Agreement, including the right to 'retain, use, occupy [and] develop' designated units in the [b]uilding." App'x 26, 50-51. The unjust enrichment claim in Count VI therefore must be dismissed as duplicative.

**II**

Neither party addresses in its briefing on appeal whether the case must be remanded to the bankruptcy court or to state court. At oral argument, counsel for Little Hearts argued that the bankruptcy court lacks subject-matter jurisdiction over the direct claims and therefore the case must return to the state court. *See* Oral Argument Audio Recording at 45:50. He acknowledged that the bankruptcy court may exercise jurisdiction over a direct claim that is closely related to a bankruptcy case, but he suggested that such a close relationship is missing here. *See* 28 U.S.C. § 1334(b) (providing that the district court in which the bankruptcy case is filed "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11").

The jurisdiction of the bankruptcy court extends to "core proceedings" that arise under—or in cases under—the Bankruptcy Code and to non-core proceedings that are "related." 28 U.S.C. § 157; *see id*. § 1334. "Core proceedings" include "matters concerning the administration of the estate" and "proceedings affecting the liquidation of the assets of the estate." *Id*. § 157(b)(2)(A), (O). Among the "assets of the estate" that the creditor trust must liquidate pursuant to the plan is the derivative claim for breach of fiduciary duty against Prime and Carter. The direct claims that Little Hearts asserts here may affect the liquidation of that asset because if Little Hearts prevails, its share of any recovery for the fiduciary-duty claims will be correspondingly reduced to avoid a double recovery. Moreover, even if the direct claims are not part of a core proceeding, the claims may still be "related" to the bankruptcy.[4] "[A] civil proceeding is related to a bankruptcy case when 'the outcome of that proceeding could conceivably have any effect on the estate.'" 1 Collier on Bankruptcy ¶ 3.01[3][e][ii] (16th ed. 2024) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

If the direct claims are part of a non-core but related proceeding based on a state law claim or cause of action, the bankruptcy court will need to decide whether to abstain under § 1334(c)(2). That statute provides that when a proceeding is "related" to a core proceeding but

---

[4] It is not inconsistent to conclude that a claim arises in or is related to a bankruptcy proceeding, on the one hand, but is not embedded in or confused with a claim belonging to the debtor, on the other. The statute conferring jurisdiction on the bankruptcy court looks to the effect of the proceeding on the bankruptcy estate. The New York cases applying *Tooley*, by contrast, aim at ensuring plaintiffs do not "conflate … derivative and individual rights." *Serino*, 994 N.Y.S.2d at 69. A claim may be based on a plaintiff's individual rights—such as a contract right—and nonetheless have a potential effect on the bankruptcy estate.

"could not have been commenced in a court of the United States" absent that relation, the federal courts "shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). We have explained that timeliness under § 1334(c)(2) depends on "a case- and situation-specific inquiry that requires a comparison of the time in which the respective state and federal forums can reasonably be expected to adjudicate the matter." *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 580 (2d Cir. 2011).

The bankruptcy court should address these questions in the first instance, with the option of receiving briefing from the parties. We therefore remand to the district court with instructions to remand to the bankruptcy court so that the bankruptcy court may determine—before it proceeds to the merits—whether it may exercise jurisdiction over the direct claims under 28 U.S.C. § 1334(b) and whether, if the claims are part of a non-core proceeding, abstention is warranted under 28 U.S.C. § 1334(c)(2).

## CONCLUSION

We have previously explained that "when a plaintiff asserts a claim based on the plaintiff's own right, such as a claim for breach of a commercial contract," the claim is direct regardless of the *Tooley* test. *Brightstar Asia*, 43 F.4th at 122 (quoting *Citigroup*, 140 A.3d at 1139-40). In this case, the claims for breach of contract and for breach of the implied covenant of good faith and fair dealing belong to Little Hearts, not to the creditor trust. The fiduciary duty claims are derivative, however, and may be asserted only by the creditor trustee. Because the unjust enrichment claim duplicates the contract claims, it must also be dismissed. We therefore affirm the judgment in part,

vacate in part, and remand for further proceedings consistent with this opinion.[5]

---

[5] We note that Count V asserts an *alter ego* theory of liability against Carter. Because *alter ego* liability "is not itself an independent … cause of action, but rather is a means of imposing liability on an underlying cause of action," *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (internal quotation marks omitted), Little Hearts may pursue the theory on remand for its direct claims.